UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SEDONIA YOUNG,

    Plaintiff,

v.

PORT OF TACOMA, ANDREA RINIKER, individually and the marital community thereof with JOHN DOE RINIKER, TIMOTHY FARRELL, and DOES 1-5, inclusive,

    Defendant.

Case No. C04-5473FDB

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING AGE, GENDER AND NEGLIGENT SUPERVISION CLAIMS

    Before the Court is the motion of Defendants Andrea Riniker ("Riniker"), Timothy Farrell ("Farrell") and the Port of Tacoma ("the Port") for an order granting partial summary judgment dismissing Plaintiff Sedonia Young's (hereinafter "Young") claims of age and gender discrimination and dismissing her claim of negligent supervision. The Court, having reviewed the motion, opposition, the parties' summary judgment evidence, and the balance of the record, finds, that the motion should be granted.

I.

    This case arises from Young's employment by the Port of Tacoma ("The Port") as Director of Human Resources from 1996 to 2003. In November 2002, Young was given a written warning outlining her supervisor's concerns with Young's work performance relating to benefits administration, communication and management of the Human Resources Department. In March

ORDER - 1

2003, Young was given a letter of reprimand relating to her involvement in a recruitment process which resulted in a written complaint from the Union.  In May 2003, citing concerns with Young's job performance, the Port offered Young a choice of leaving her employment or transferring to another department without reduction in pay.  Young chose the transfer to a new position as Manager Administration.  On May 24, 2004, the Port tendered written notice of termination to Young.  Young claims that she was terminated due to her age, gender and race.  The Port claims that it had legitimate, non-discriminatory reasons for terminating Young's employment.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56( c).  Summary judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts which show a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).  Summary judgment is proper if the moving party shows that there is no evidence which supports an essential element to the non-moving party's claim. Celotex, 477 U.S. 317 (1986).  The substantive law governs whether a fact is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III.

The evidence presented by Young in support of her discrimination claims is analyzed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Thus, Young has the burden of establishing a prima facie case by showing that (1) she is a member of a protected class; (2) she was qualified for her position; (3) that she experienced an adverse employment action; and (4) similarly situated

ORDER - 2

1 individuals outside his protected class were treated more favorably, or other circumstances
2 surrounding the adverse employment action give rise to an inference of discrimination. *Chuang v.*
3 *Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000). It is with the fourth requirement that
4 Young's claims of age and gender discrimination fail.[1]

5 Once Young has established a prima facie case of discrimination, Defendants may rebut that
6 showing by establishing that their actions with respect to Young were taken for legitimate non-
7 discriminatory reason. At that point, the burden shifts back to Young to come forward with "specific
8 and substantial" evidence establishing that her employer's proffered reason for taking the adverse
9 action was merely a pre-text for the discriminatory reason. "A plaintiff can show pretext in two
10 ways, 'either [1] directly by persuading the court that a discriminatory reason more likely motivated
11 the employer or [2] indirectly by showing that the employer's proffered explanation is unworthy of
12 credence.'" *Cotton v. City of Alameda*, 812 F.2d 1245, 1248 (9th Cir. 1987).

13 **A.  Legitimate Non-Discriminatory Reasons**

14 Defendants' proffered reasons for Young's transfer and termination include Young's failure
15 to meet performance objectives to raise the department to the next level through effective staff
16 utilization; failure to produce a comprehensive benefits plan; making remarks suggesting that the
17 Port adopt a discriminatory approach to hiring; insubordination; failure to exhibit appropriate
18 communication skills; leaving work without permission, and acting in an inappropriate manner
19 towards another employee at a public luncheon.

20 In response, Young identifies various areas of her job where she performed well. She argues
21 that her performance evaluations for 2001 and 2003 reflect satisfactory ratings. Young points out
22 that, although she had not completed her assignment with regard to the benefits program, she
23 received a rating indicating that the "basic results and key outcomes were satisfactory," and that the

---

[1] Plaintiff's claim of racial discrimination is not the subject of Defendants' summary judgment
25 motion or this Order.

26 ORDER - 3

Port's consultant described her work as professional and comprehensive. Young also complains that she was never progressively disciplined.

The court does not find these facts inconsistent with Defendants' proffered reasons for Young's transfer and termination. The progressive discipline procedure policy cited by Young provides that the disciplinary process "may take any of the following progressive forms: verbal counseling, written counseling statement, warning letter, extended probation, lack of salary increase, suspension with or without pay on a case-by-case basis, or discharge." Defendants' written warnings and counseling through verbal and written statements, performance reviews, and transfer as an alternative to dismissal, appear to have been a reasonable approach under this policy and belies Young's allegation that she was never informed of any performance issues until she received the letter terminating her employment.

Young does not dispute that she never completed the benefits project and even assuming her paraphrasing of the Port's consultant's testimony as true,[2] does not provide evidence to dispute that she was faulted for her failure to put together a benefits review that permitted the Port Commissions and senior staff to "buy-off" on the benefits changes. In her 2002 performance evaluation, it was noted that while the background work needed to communicate and implement changes had been done, her failure to implement the change was seen to stem from her inability "to communicate the challenges that the Port faces and to demonstrate clearly and concisely the Port's objectives and how the Human Resources department will address those challenges."

In the November 2002 memorandum to Young, Riniker also expressed concerns of communications problems. Specifically, the memorandum addressed Young's statement to an apprenticeship hiring committee that they should hire a lesser qualified candidate because of that

---

[2]Defendants argue that Mr. Gunderson's testimony during cross-examination was that the data collected and presented to him appeared to be professional and comprehensive but he did not know who had copied the data and that most appeared to have been prepared by other organizations.

ORDER - 4

candidate's minority status.  In response, Young claims that another employee told her that the committee should hire a minority and that she was only expressing the Port's commitment to diversity.  However, in her December 18, 2002 memorandum, Young acknowledged that the statement was inappropriate.   In addition, a letter from the president of the ILWU Port Office and Maintenance Group indicates that a Union member on the interview committee requested a meeting with the Port to discuss Union concerns about Young's comments.

The November 2002 memorandum also addressed Young's failures to adequately manage the human resources department.  Testimony by one of her staff members indicates that her failures in management were significant and resulted in the Port's human resources staff being stretched too thin, performing tasks with no clear direction.  Young provides no evidence to contradict Defendants' evidence of the investigation and subsequent letter of reprimand of March 10, 2003, which she refused to accept.  According to the letter of reprimand, two staff members complained that Young advised that they should consider the Port's costs of health benefits in assessing the job candidates because she noticed that two of the candidates were quite overweight.  The letter of reprimand advised Young that her advice was "inappropriate, prejudicial and most likely illegal," and reminded her of the prior warning she had received in the November 2002 memorandum concerning her comment about hiring candidates based on race.

Young also does not dispute that she handed a tampon to a former subordinate, remarking that it must have been her "time of the month" at a public event with other Port employees and representatives from government agencies.  Nor does Young dispute that she was counseled with respect to her ineffective management of the switchboard.

Although Young focuses on her employment evaluations evidencing satisfactory performance, the court does not find that these are inconsistent with Defendants' decision to fire her.  Rather, the satisfactory ratings must be read together with the detailed assessments of Young's performance by her supervisor in order to determine areas of inadequate performance.  These

ORDER - 5

performance reviews, when read in conjunction with the November 2002 memorandum and letter of reprimand, clearly focus on Young's leadership and communication skills. Defendants found these particular skills lacking.

Thus, the court finds that Young has failed to raise a triable issue of fact that Defendants' reasons for transferring her and for terminating her were pretextual.

**B.     Age Discrimination Claim**

Young makes two complaints of age discrimination – that the Port had a pattern and practice of discrimination based on age and that she was personally discriminated against on the basis of her age.

Young admits that while other employees hired or promoted were in the protected class themselves (all except one were over the age of forty, but younger than Young), this is not itself dispositive of whether she has been discriminated against because of her age. The court agrees and also notes that while Young has established that people younger than her were hired, she has presented no evidence to suggest that younger workers received preferential treatment.

Young argues instead, that Defendants' discriminatory intent may be inferred from statements made Port employees. In a discussion between Riniker and Young, they discussed that they were of similar age and Riniker asked Young if she agreed that her performance had been slipping. Young also claims that Farrell, the Port's Executive Director, "felt that the older individuals had archaic ways of thinking" and he wanted 'younger blood.'" (Young was not specific in her deposition testimony as to what Farrell said to communicate this point and did not testify that he used the term "younger blood.")[3] Young also complains that Jeff Smith, the Senior Director of Finance and Administration, prepared a Power Point presentation, in which he identified a current culture

---

[3]As noted by Defendants, if it was Farrell's intention to bring in younger blood, he did not do so as every person (except one) hired into director positions was an age-protected individual and senior to Farrell at the time of hire or promotion.

ORDER - 6

strength of the Port as an employer of "young" individuals.  (The Power Point slide actually states that one of the current culture strengths of the finance department is that it is "young and healthy.")

Even assuming these comments as true and undisputed, they are not sufficient to establish that Young was discriminated against based on her age.  While comments suggesting that an employer may have considered impermissible factors are clearly relevant to a disparate treatment claim, "stray" remarks are insufficient to establish discrimination.  *See*, *Samarzia v. Clark County*, 859 F.2d 99, 91 (9th Cir. 1988), *amended by*, 866 F.2d 1185 (9th Cir. 1989); *Price Waterhouse v. Hopkins*, 940 U.S. 228, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989) (plurality); *id.* at 1804 (O'Connor, J., concurring); *id.* at 1806 (Kennedy, J. dissenting).  The court finds that these stray comments are insufficient to establish discrimination.  *See e.g.*, *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (comments by supervisor and company president that  "we don't necessarily like grey hair" and "we don't want unpromotable fifty-year olds around found insufficient.")  *See also*, *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 915, 920 (9th Cir. 1996)(comment by district supervisor that he "intended to get rid of all the 'old timers' because they would not 'kiss my ass," found insufficient.)

Most telling, however, is Young's testimony that she attributes any differences in treatment to her race "because they were all white females," and she admits that her supervisor never made a comment to her based on age.

Accordingly, the court finds that Young has failed to establish any dispute of material fact regarding her age discrimination claim.

**C.    Gender Discrimination Claim**

In support of her gender discrimination claim, Young testified that she believed she was treated less favorably than her male counterparts in the application of disciplinary standards.  Young alleges that these males engaged in "egregious conduct," to which her "'conduct' pales in comparison."  Young also contends that she was never given the opportunity to remain employed as

ORDER - 7

the other male Caucasians.  The evidence does not support these allegations.   Rather, the evidence indicates that the males identified by Young were subjected to various forms of discipline including transfers, probation, suspension of pay, denial of annual and merit increases, and forced retirement.

The record is also devoid of evidence that these individuals received better treatment than Young or that the discipline was related to a history of performance issues comparable to her own.  With the exception of one male comparator, who chose retirement during his disciplinary probationary period, the evidence indicates that the disciplinary issues attributable to these individuals were not of a continuing nature, were addressed by management, and were apparently successfully corrected (as there is no evidence in the record of subsequent conduct by these individuals requiring disciplinary action).  As to one of the comparators, Young complains that he received a pay increase following his reassignment or demotion.  However, the personnel record indicates that Young endorsed that pay increase.

Young's allegation of gender discrimination are also undermined by the presence of several women in the Port's management and senior leadership positions.   Our of eleven leadership positions, the Port's Executive Director was female and there were four female directors or senior directors in addition to Young.

Young's claim that, unlike her male comparators, she was never given an opportunity to remain employed is not credible in light of the Port's willingness to transfer her to another position rather than terminate her employment earlier in 2003.  Finally, Young's testimony was that she could not recall any statements by Defendants showing animus toward women and that her only other basis for the sex discrimination claim was that she was denied an annual increase because of a poor performance review and Riniker did nothing to stop or reverse her supervisor's actions.  Young also admits that neither Riniker nor Jeff Smith, her supervisor at the time of her termination, said anything to indicate gender was a consideration in their decision.

Young's allegations that she was treated differently than her male counterparts or that she

ORDER - 8

was subjected to more scrutiny and criticism are not substantial evidence that she was treated differently or terminated because of her gender, but are merely conclusory. *See Douglas*, 656 F.2d at 533. Accordingly, her claims of gender discrimination fail as a matter of law.

### D.  Negligent Supervision Claim

Young alleges that the Port is liable under a theory of negligent supervision because the Port, through Farrell, discriminated against her on the basis of her race, age and sex and retaliated against her. Because this claim arises out of the same facts and seeks the same relief as her statutory claims, it is duplicative of those claims and should be dismissed. *Francom v. Costco Wholesale Corp.*, 991 P.2d 1182, 113 (Wash. App. 2000).[4]

ACCORDINGLY,

IT IS ORDERED:

(1) Defendants' motion for partial summary judgment (Dkt.# 21) is **GRANTED** and Plaintiff's age discrimination claims (Third and Seventh Causes of Action), sex and gender discrimination claims (First and Sixth Causes of Action), and negligent supervision claim under Washington law (Ninth Cause of Action) are **DISMISSED WITH PREJUDICE.**

DATED this 31st day of August, 2005.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

---

[4]Young's summary judgment evidence in support of this claim consists entirely of conclusory allegations that the Port should have known that Young was being treated differently than the male employees.

ORDER - 9